SCHNADER HARRISON SEGAL &
LEWIS LLP
Lisa J. Rodriguez
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1165
Telephone: (856) 482-5222
Facsimile: (856) 482-6980
ljrodriguez@schnader.com

*Counsel for Plaintiff*

[Additional Counsel On Signature Page]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ZOSER VARGAS, Derivatively on behalf of RENOVACARE, INC., | Case No.: |
| Plaintiff, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| HARMEL S. RAYAT, THOMAS BOLD, KAIYO NEDD, ROBERT W. COOK, ALAN L. RUBINO, LYDIA M. EVANS, KENNETH KIRKLAND, JATINDER S. BHOGAL, and STEVE YAN-KLASSEN, | |
| Defendants, | |
| -and- | |
| RENOVACARE, INC., a Nevada corporation, | |
| Nominal Defendant. | |

1

By and through their undersigned counsel, Plaintiff Zoser Vargas ("Plaintiff") brings this shareholder derivative action on behalf of nominal defendant RenovaCare, Inc. ("RenovaCare" or the "Company"), against Harmel S. Rayat ("Rayat"), Thomas Bold ("Bold"), and the remaining Individual Defendants (defined below) for (i) issuing false and misleading statements and failing to establish and maintain effective internal controls in breach of their fiduciary duties; (ii) unjust enrichment; (iii) corporate waste; and (iv) for contribution and indemnification under Nevada law. Plaintiff makes these allegations upon personal knowledge as to those allegations concerning themselves and, as to all other matters, upon the investigation of counsel, which includes without limitation: (a) review and analysis of public filings made by RenovaCare and other related parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases, interviews, and other publications disseminated by certain of the Individual Defendants and other related non-parties; (c) review of news articles, shareholder communications, and postings on RenovaCare's website concerning the Company's public statements; (d) pleadings, papers, and any documents filed with, and publicly available from, the related complaint ("SEC Complaint") filed in *SEC v. Rayat and RenovaCare, Inc.*, 1:21-cv-04777 (S.D.N.Y) (the "SEC Action"); (e) pleadings, papers, and any documents filed with, and publicly available from, the related securities fraud class action styled *In re*

2

*RenovaCare, Inc. Securities Litigation*, No. 2:21-cv-13766-BRM-ESK (D.N.J.) (the "Securities Class Action");[1] and (f) review of other publicly available information concerning RenovaCare and the Individual Defendants.

## NATURE AND SUMMARY OF THE ACTION[2]

1.      This derivative action arises from the breaches of fiduciary duties by certain directors and officers of RenovaCare from at least July 2017 to May 28, 2021 (the "Relevant Period"), including, *inter alia*, the Individual Defendants' (defined below) repeated materially false and misleading statements made on behalf of the Company, unlawful promotional campaign to issue false and misleading statements to artificially inflate the Company's stock price, and complete abdication of their fiduciary responsibilities to implement and maintain an adequate system of internal disclosure controls and procedures to prevent such misconduct.

2.      RenovaCare is a development stage company that has not generated any revenue since its inception and has no commercialized products. Its activities primarily consist of research and development, business development, and capital raises. It owns the CellMist System, which consists of a treatment method for cell isolation for the regeneration of human skin cells and other tissues (the CellMist

---

[1] On November 22, 2021, a then-separately pending securities class action lawsuit captioned *Solakian v. RenovaCare, Inc. et al.*, No. 2:21-cv-13930 (D.N.J.), was consolidated into *Boller v. RenovaCare, Inc. et al.*, No. 2:21-cv-13766 (D.N.J.).

[2] All textual emphases in quoted material in this Complaint are added unless otherwise noted.

Solution) and a solution sprayer device to deliver cells to the treatment area (the SkinGun).

3. On May 28, 2021, the SEC filed the SEC Action complaint ("SEC Complaint") stating that RenovaCare was being charged with alleged securities fraud. According to the SEC Complaint, between July 2017 and January 2018, the Company's controlling shareholder and Chairman, Rayat, "arranged, and caused RenovaCare to pay for, a promotional campaign designed to increase the company's stock price." Specifically, "Rayat was closely involved in directing the promotion and editing promotional materials, and arranged to funnel payments to the publisher through consultants to conceal RenovaCare's involvement in the campaign." When OTC Markets Group, Inc. ("OTC Markets") requested that RenovaCare explain its relationship to the promotion, the SEC Complaint alleges that "Rayat and RenovaCare then drafted and issued a press release and a Form 8-K that contained material misrepresentations and omissions denying Rayat's and the [C]ompany's involvement in the promotion."

4. On this news, the Company's stock price fell $0.66, or 24.8%, over three consecutive trading sessions to close at $2.00 per share on June 2, 2021.

5. Throughout the Relevant Period, the Individual Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically,

PHDATA 8018031_1

the Individual Defendants failed to disclose to investors that: (i) at the direction of Rayat, RenovaCare engaged in a promotional campaign to issue materially false and misleading statements to artificially inflate the Company's stock price; (ii) when the OTC Markets inquired, RenovaCare and Rayat issued a materially false and misleading press release claiming that no director, officer, or controlling shareholder had any involvement in the purported third party's promotional materials; (iii) as a result of the foregoing, the Company's internal disclosure controls and procedures were defective; and (iv) as a result of the foregoing, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

6.      These materially false and misleading misstatements were permitted to occur because, among other reasons, the Director Defendants (defined herein) failed entirely to implement and maintain an adequate system of internal disclosure controls and procedures within the Company to prevent the misconduct detailed herein, constituting bad faith.

7.      The Individual Defendants' breaches of fiduciary duties severely damaged the Company by exposing it to liability for violating the federal securities laws by making or otherwise allowing the materially false and misleading public statements in their capacities as RenovaCare corporate officers and directors,

PHDATA 8018031_1

including, but not limited to, significant potential exposure in the Securities Class Action.

8.      RenovaCare's Board of Directors ("Board"), consisting of Defendants Rayat and Kaiyo Nedd, M.D. ("Nedd"), has not commenced, and will not commence, litigation against the Individual Defendants named in this Complaint, let alone vigorously prosecute such claims, because the Board faces a substantial likelihood of liability for the wrongdoing alleged herein and because Defendant Nedd is beholden to Defendant Rayat, among other reasons detailed herein.  Indeed, instead of taking remedial action against the Individual Defendants, the Company has funded and/or supported the defense of Defendants Rayat and Bold in the Securities Class Action.

9.      Thus, Plaintiff rightfully brings this action in the name of, and on behalf of, RenovaCare to vindicate the Company's rights against the Individual Defendants named herein, and to hold them responsible for the grievous damages that they, as wayward fiduciaries, have caused—and will continue to cause—the Company.

## JURISDICTION AND VENUE

10.      Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over the claims asserted herein because complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interests and costs.  This action is not

PHDATA 8018031_1

a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

11.     This Court has personal jurisdiction over each of the defendants because each Defendant is either a corporation conducting business and maintaining operations in this district or is an individual who is either present in this district for jurisdictional purposes or has, directly and indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities exchanges and markets, such that each defendant has sufficient minimum contacts with this district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this district under 28 U.S.C. § 1391 because: (a) RenovaCare maintained its principal executive offices in this District; (b) one or more of the Individual Defendants reside(s) in this District; (c) a substantial portion of the transactions and wrongs complained of herein—including the Individual Defendants' primary participation in the wrongful acts—occurred in this District; and (d) the Individual Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

PHDATA 8018031_1

## THE PARTIES

### A.    Plaintiff

13.    Plaintiff Zoser Vargas has been a RenovaCare shareholder since 2017, and is currently, and at all relevant times has been, a holder of RenovaCare securities. Plaintiff Vargas is a citizen of Kentucky.

### B.    Nominal Defendant

14.    Nominal Defendant RenovaCare is incorporated in Nevada. RenovaCare's principal executive offices are located at 9375 E. Shea Blvd., Suite 107-A, Scottsdale, Arizona 85260.  RenovaCare's shares trade on the OTC Markets under the ticker symbol "RCAR."

### C.    Individual Defendants

15.    Defendant Rayat is the Chairman of the Board of RenovaCare since March 2021 when he was appointed to the position.[3]  Rayat has also previously served the Company in various other capacities, including, at various times, as its President and Chief Executive Officer ("CEO") and as a member of the Company's

---

[3] Rayat was reappointed through Written Consent dated March 16, 2021 of the shareholders of RenovaCare, Inc. in lieu of a special meeting of the shareholders. Specifically, Rayat was appointed by the consent of the following shareholders: Kalen Capital Corporation (Rayat's family office); Kalen Capital Holdings, LLC (controlled by Rayat); 1420525 Alberta Ltd. (a private Alberta corporation wholly owned by Rayat); Defendant Rayat (individually); Tajinder Chohan (Rayat's spouse); Defendant Bold; 1420527 Alberta Ltd.; Boston Financial Group, Ltd.; Jasvir S. Rayat; Joseph Sierchio (former director of RenovaCare); Cindy Bains; and Herdev S. Rayat.

PHDATA 8018031_1

Board.  Specifically, Rayat served as Chairman from March 2018 to October 2020 and also served as CEO from June 2018 to November 2019.  Rayat has also been the long-time majority stockholder and a financial supporter of RenovaCare.  Through his family office,[4] Kalen Capital Corporation, Rayat has invested over $20 million RenovaCare since 2013.  Rayat is a named defendant in the Securities Class Action as well as in the SEC Complaint.  As alleged in the SEC Complaint and during the Relevant Period, Rayat attempted to sell RenovaCare shares through at least two brokerages.  The first brokerage closed Rayat's account before any sales could be made, and the compliance department of the second brokerage denied his required to open an account.  For these reasons, the sales were never made.  Defendant Rayat is a citizen of Florida.

16.     Defendant Bold was the Company's CEO from December 2013 to June 2018, the Company's President and member of the Board from December 2013 to March 2019, and the Company's interim Chief Financial Officer ("CFO") from September 2016 to October 2018.  On March 30, 2019, Defendant Bold resigned his position as the Company's President and as a member of the Board.  Defendant Bold

---

[4] According to Investopedia, "[f]amily offices are private wealth management advisory firms that serve ultra-high-net-worth individuals.  They are different from traditional wealth management shops in that they offer a total outsourced solution to managing the financial and investment side of an affluent individual or family."  *See* https://www.investopedia.com/terms/f/family-offices.asp#:~:text=Family%20offices%20are%20private%20wealth,an%20affluent%20individual%20or%20family (last accessed on December 29, 2021).

PHDATA 8018031_1

continued to provide consulting services to the company pursuant to an at will consulting agreement. During the years ended December 31, 2017, 2018 and 2019, the Company recognized expenses related to Defendant Bold's consulting services and for his performance as CFO of $378,700, $100,000, and $43,000 respectively. Bold is a named defendant in the Securities Class Action. Defendant Bold is a citizen of Germany.

17.     Defendant Nedd was appointed to the Board on March 16, 2021 and was appointed President and CEO on March 26, 2021. Defendant Nedd is a citizen of British Columbia, Canada.

18.     Robert W. Cook ("Cook") was the Company's CFO and Secretary from June 22, 2020 until his resignation on April 7, 2021. For the fiscal year ended December 31, 2020, Cook received $220,000 in compensation from the Company. Defendant Cook is a citizen of New York.

19.     Alan L. Rubino ("Rubino") was the Company's President, CEO, and Chairman of the Board from November 2019 to March 25, 2021. For the fiscal year ended December 31, 2019 and 2020, Rubino received $2,766,344 and $2,141,544, respectively, in compensation from the Company. Defendant Rubino is a citizen of New Jersey.

20.     Dr. Lydia M. Evans ("Evans") was a director of the Company from August 2020 to March 2021. For the fiscal year ended December 31, 2020, Evans

PHDATA 8018031_1

received $8,333 in compensation from the Company.  Defendant Evans is a citizen of New York.

21.    Kenneth Kirkland ("Kirkland") was a director of the Company from August 2013 to March 2021.  For the fiscal year ended December 31, 2017, 2018, 2019, and 2020, Kirkland received $254,700, $6,000, $6,000 and $13,000, respectively, in compensation from the Company.  Defendant Kirkland is a citizen of Iowa.

22.    Jatinder S. Bhogal ("Bhogal") was the Chief Operating Officer of the Company from June 2018 to June 2020 and a consultant to the Company through his wholly owned company, Vector Asset Management, Inc., from August 2013 to the present.  For the fiscal year ended December 31, 2017, 2018, 2019, and 2020, Bhogal received $81,600, $103,467, $120,850, and $1,014,000, respectively, in compensation from the Company.  Defendant Bhogal is a citizen of Arizona.

23.    Steve Yan-Klassen ("Yan-Klassen") was the CFO of the Company from October 2018 to June 2020.  For the fiscal year ended December 31, 2018 and 2019, Yan-Klassen received $5,000 and $23,000 in compensation from the Company.  Defendant Yan-Klassen is a citizen of Canada.

24.    Defendants Rayat, Bold, Nedd, Cook, Rubino, Evans, Kirkland, Bhogal, and Yan-Klassen are sometimes referred to as the "Individual Defendants."

PHDATA 8018031_1

25.     Defendants Rayat, Bold, Nedd, Rubino, Evans, and Kirkland are sometimes referred to herein as the "Director Defendants."

26.     The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their position with the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading.

## SUBSTANTIVE ALLEGATIONS

### A.     Company Background

27.     RenovaCare is a development stage company that has not generated any revenue since its inception and has no commercialized products. Its activities primarily consist of research and development, business development, and capital raises. It owns the CellMist System, which consists of a treatment method for cell isolation for the regeneration of human skin cells and other tissues (the CellMist

PHDATA 8018031_1

Solution) and a solution sprayer device to deliver cells to the treatment area (the SkinGun).

**B.    The Individual Defendants' False and Misleading Statements**

28.    On August 14, 2017, RenovaCare filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2017.  That quarterly report stated, in relevant part:

> Based on [an] evaluation the CEO has concluded that as of the end of the period covered by this report, our disclosure controls and procedures are effective in ensuring that: (i) information required to be disclosed by us in reports that we file or submit to the SEC under the [Securities Exchange Act of 1934 ("Exchange Act")] is recorded, processed, summarized and reported within the time periods specified in applicable rules and forms and (ii) material information required to be disclosed in our reports filed under the Exchange Act is accumulated and communicated to our management, including our CEO, as appropriate, to allow for accurate and timely decisions regarding required disclosure.

29.    On November 14, 2017, RenovaCare filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2017.  That quarterly report stated, in relevant part:

> Based on [an] evaluation the CEO has concluded that as of the end of the period covered by this report, our disclosure controls and procedures are effective in ensuring that: (i) information required to be disclosed by us in reports that we file or submit to the SEC under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in applicable rules and forms and (ii) material information required to be disclosed in our reports filed under the Exchange Act is accumulated and communicated to our management, including our CEO, as appropriate, to allow for accurate and timely decisions regarding required disclosure.

PHDATA 8018031_1

30.     On January 8, 2018, RenovaCare issued a statement "comment[ing] on recent market activity."  Specifically, the Company issued a press release stating:

[O]n January 3rd, 2018, [OTC Markets] informed the Company that OTC Markets had become aware of promotional activities concerning the Company.

OTC Markets provided an example, dated January 2nd, 2018, of the promotional material for reference.  It is the Company's understanding that the material provided was part of an annual predictions report used in part to generate new subscribers for various newsletters owned by StreetAuthority LLC, an independent publisher founded in 2001.  ***The Company had no editorial control over the content*** and was one of thirteen companies independently selected, researched and mentioned. The annual predictions report was disseminated during the last quarter of 2017.  During this time, 2,190,000 shares traded, only 2% more than the average quarterly volume of 2,139,375 shares during all of 2017.

Subsequently, later in the 4th quarter, a material announcement regarding a failed challenge to a RenovaCare patent was made public. On December 20th, 2017, a press release was issued by Avita Medical Limited disclosing that its petition for an Inter Partes Review with the Patent Trial and Appeal Board ("PTAB") to invalidate all claims in U.S. Patent No. 9,610,430 (owned by the Company) was denied.  This press release was followed by an article in Stockhead on December 21st, 2017, which more fully reported on the PTAB denying Avita Medical Limited's petition, and, thereby, upholding the patentability of RenovaCare's technology.

After the issuance of Avita Medical's press release and the follow-up article in Stockhead on December 21st, 2017, the trading volume of the Company's common stock increased 84% to 62,829 shares per day between December 20th and December 29th, versus 32,720 per day previously between December 1st through December 19th, 2017.

***The Company is not affiliated in any way with the authors of the annual predictions report or its publisher.***  The Company issues press releases in the regular course of business and includes in its filings (the

14

"SEC Filings") with the [SEC] the material business activities of the Company, and investors are encouraged to rely on the information provided directly by the Company in such press releases and SEC Filings.

*In the report, the substance of the material statements pertaining to the Company's technology and products are not materially false or misleading*, even though the report has significantly simplified the descriptions of the clinical indications and outcomes related to the use of the Company's cell spray for the treatment of burns and wounds, and used promotional, advisory and superfluous language in describing the Company, its products and its stock. Moreover, the author comments on the Company's interaction with the U.S. Food and Drug Administration and the performance of RenovaCare's stock. The Company does not know the basis for such opinions or conclusions arrived-at by the author. Investors are reminded to rely upon the Company's own statements, press releases, and filings with the SEC for information related to these matters.

Following notification from OTCQB Markets, the Company immediately made inquiries of its executive officers, directors, controlling shareholders (i.e., shareholders owning 10% or more of the Company's securities) and third-party service providers regarding their involvement in the creation or distribution of promotional materials related to the Company and its securities.

*To the Company's knowledge, the Company, its executive officers, directors or, its controlling shareholder, or any third-party service providers have, directly or indirectly:*

- *not* been involved in any way (including payment of a third-party) with the creation or distribution of promotional materials, including the annual predictions report, related to the Company and its securities; and

- *not* sold or purchased (other than in than in private placements conducted by the Company as described below) any shares of common stock of the Company within the last 90 days. The Company's former service provider, Inspiren Media LLC, originally acquired 5,000 shares of the Company on July 25th,

15

2008 and sold on January 3rd, 2018, after termination of its agreement with the Company. All activity in the Company's common stock by the Company's executive officers, directors and controlling shareholders has been disclosed by such officer, director and shareholder in the Company's SEC Filings.

The Company was not involved in the creation, or directing the dissemination, of the report. Through its investor relations agencies, the Company paid $90,005.25 between October 24th, 2017 and January 2nd, 2018, as part of its contractual agreement to pay for out of pocket costs, including reimbursement of dissemination related costs, incurred by the investor relations agency.

31. On March 13, 2018, RenovaCare filed its annual report on Form 10-K with the SEC for the period ended December 31, 2017, which was signed and authorized by Defendants Bold (as President, CEO, and Interim CFO, Kirkland, and Sierchio, and contained certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX") signed by Defendant Bold attesting to the accuracy of the financial statements contained therein. That annual report stated, in relevant part:

Based on [an] evaluation, management, after evaluating the effectiveness of our "disclosure controls and procedures" (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)), have concluded that, as of December 31, 2017, our disclosure controls and procedures were effective in providing reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with U.S. generally accepted accounting principles.

32. On April 12, 2019, RenovaCare filed its annual report on Form 10-K with the SEC for the period ended December 31, 2018, which was signed and authorized by Defendants Rayat, Kirkland, and Yan-Klassen, and contained

certifications pursuant to SOX by Defendants Rayat and Yan-Klassen attesting to

the accuracy of the financial statements contained therein.  That annual report stated,

in relevant part:

> Based upon [an] evaluation, our Principal Executive Officer and Acting Principal Financial Officer concluded, as of the end of the period covered by this Annual Report that our disclosure controls and procedures were not effective due to material weaknesses in internal control over financial reporting as discussed and defined in Management's Report on Internal Control over Financial Reporting referred to below.
>
> *     *     *
>
> Management has identified the following material weaknesses in our internal control over financial reporting:
>
> - Ineffective control environment due to an insufficient number of independent board members, insufficient oversight of work performed, and the lack of compensating controls over financial reporting due to limited personnel;
>
> - Ineffective design, implementation, and documentation of internal controls impacting financial statement accounts and general controls over technology pertaining to user access and segregation of duties, banking and disbursements, and financial accounting system applications; and
>
> - Ineffective monitoring controls related to the financial close and reporting process, including management's risk assessment process and its identification, evaluation, and timely remediation of control deficiencies.

33.    On May 14, 2020, RenovaCare filed its annual report on Form 10-K

with the SEC for the period ended December 31, 2019, which was signed and

authorized by Defendants Rubino, Yan-Klassen, Rayat, and Kirkland, and contained

certifications pursuant to SOX by Defendants Rubino and Yan-Klassen attesting to the accuracy of the financial statements contained therein. That annual report stated, in relevant part:

> Based upon [an] evaluation, our [CEO] and Acting Principal Financial Officer concluded, as of the end of the period covered by this Annual Report that our disclosure controls and procedures were not effective due to material weaknesses in internal control over financial reporting as discussed and defined in Management's Report on Internal Control over Financial Reporting referred to below.
>
>        *     *     *
>
> Management identified the following material weaknesses in our internal control over financial reporting as of December 31, 2019:
>
> Because of the Company's limited resources, there are limited controls over information processing.

34. On March 31, 2021, RenovaCare filed its annual report on Form 10-K with the SEC for the period ended December 31, 2020, which was signed and authorized by Defendants Nedd and Cook, and contained certifications pursuant to SOX by Defendants Need and Cook attesting to the accuracy of the financial statements contained therein. That annual report stated, in relevant part:

> Based upon [an] evaluation, our [CEO] and Principal Financial Officer concluded, as of the end of the period covered by this Annual Report that our disclosure controls and procedures were not effective due to material weaknesses in internal control over financial reporting as discussed and defined in Management's Report on Internal Control over Financial Reporting referred to below.
>
>        *     *     *

Management identified the following material weaknesses in our internal control over financial reporting as of December 31, 2020:

Because of the Company's limited resources, there are limited controls over information processing.

35.    The above statements identified in ¶¶ 27–34 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the Individual Defendants failed to disclose to investors that: (i) at the direction of Rayat, RenovaCare engaged in a promotional campaign to issue misleading statements to artificially inflate the Company's stock price; (ii) when the OTC Markets inquired, RenovaCare and Rayat issued a materially false and misleading press release claiming that no director, officer, or controlling shareholder had any involvement in the purported third party's promotional materials; (iii) as a result of the foregoing, the Company's internal disclosure controls and procedures were defective; and (iv) as a result of the foregoing, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## C.    The Truth Emerges

36.    On May 28, 2021, the SEC issued a litigation release stating that RenovaCare was being charged with alleged securities fraud.  According to the SEC Complaint, between July 2017 and January 2018, Rayat "arranged, and caused

RenovaCare to pay for, a promotional campaign designed to increase the company's stock price."

37.    Specifically, "Rayat was closely involved in directing the promotion and editing promotional materials," by providing "false information to StreetAuthority, LLC ("StreetAuthority") regarding the efficacy of RenovaCare's experimental burn-wound healing medical device."   Among other things, these promotional materials described a patient who purportedly recovered from severe burns in three days using RenovaCare's SkinGun, when in reality, the "before" and "after" pictures were taken five years apart.  The materials also claimed that SkinGun "could soon be approved by the FDA [U.S. Food and Drug Administration] . . . . RenovaCare has submitted a 510(k) filing to the FDA . . . ."  However, at the time, the Company did not have a pending 510(k) application and had withdrawn its only application (seeking approval for use in clinical studies).

38.    Rayat also arranged for monthly payments to the publisher "to be made through third parties for the fraudulent purpose of concealing Rayat's and the company's involvement."   According to the SEC Complaint, Rayat knew or was reckless in not knowing that the publisher was required to disclose payments from RenovaCare pursuant to Section 17(b) of the Securities Act of 1933, especially because in 2000, Rayat had settled a case with the SEC for violating the same statute.

PHDATA 8018031_1

39.     In January 2018, when OTC Markets had requested that RenovaCare explain its relationship to the promotion, the SEC Complaint alleges that "Rayat and RenovaCare then drafted and issued a press release and a Form 8-K that contained material misrepresentations and omissions denying Rayat's and the company's involvement in the promotion."

40.     On this news, the Company's stock price fell $0.66, or 24.8%, over three consecutive trading sessions to close at $2.00 per share on June 2, 2021.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.     Fiduciary Duties

41.     By reason of their positions as directors and/or officers of RenovaCare, and because of their ability to control the business and corporate affairs of RenovaCare, the Individual Defendants owed, and owe, the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were, and are, required to use their utmost ability to control and manage RenovaCare in a fair, just, honest, and equitable manner.  The Individual Defendants were, and are, required to act in furtherance of the best interests of RenovaCare and its shareholders so as to benefit all shareholders equally, and not in furtherance of their personal interest or benefit.

42.     As Company directors, the Individual Defendants are not exculpated from liability for duty of loyalty breaches, and as Company officers, they are not

PHDATA 8018031_1

exculpated from liability for duty of care breaches either, nor are their breaches of care and loyalty insulated from liability under the business judgment rule.

43.    Each director and officer of the Company owed, and owes, to RenovaCare and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

44.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of RenovaCare, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with RenovaCare, each of the Individual Defendants had knowledge of material, non-public information regarding the Company.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's business, operations, and financial prospects so that the market price of the Company's stock would be based on truthful and accurate information.

45.    Because of their advisory, executive, managerial, and directorial positions with RenovaCare, each of the Individual Defendants had access to adverse, non-public information about the Company.

22

46.    To discharge their duties, the officers and directors of RenovaCare were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company.  By virtue of such duties, the officers and directors of RenovaCare were required to, among other things:

(a)    exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner, so as to make it possible to provide the highest quality performance of their business;

(b)    exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner, and in compliance with all applicable federal and state laws, rules, regulations, and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)    when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence;

(d)    remain informed as to how RenovaCare conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(e)    establish and maintain an adequate system of internal controls at the Company;

PHDATA 8018031_1

(f)     establish and maintain systematic and accurate records and reports of the business and internal affairs of RenovaCare and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(g)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(h)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(i)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

## B.    Duties Pursuant to the Company's Code of Corporate Governance and Ethics

47.    The Individual Defendants, as officers and/or directors of RenovaCare, were bound by the Company's Code of Corporate Governance and Ethics (the "Code of Corporate Governance and Ethics"), which sets out basic principles to guide, as well as specific requirements to bind, all directors, officers, and employees of RenovaCare, who are required to know and conduct themselves in accordance

24

therewith, as well as applicable laws and regulations, and to avoid the appearance of improper behavior.

48.    The Code of Corporate Governance and Ethics specifically states that it "applies to all employees, officers and directors of RenovaCare Technologies, Inc., its subsidiaries and affiliates."

49.    To further illustrate the importance and binding nature of the specific requirements placed upon Individual Defendants, the Code of Corporate Governance and Ethics states that:

> RenovaCare's reputation depends on you maintaining the highest standards of conduct in all business endeavors. You have a ***personal responsibility*** to protect this reputation, to "do the right thing," and to act with honesty and integrity in all dealings with customers, business partners and each other. ***You should not take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts, or any other unfair-dealing practice***.
>
> *         *         *
>
> ***You are accountable for reading, understanding and adhering to this [Code of Corporate Governance and Ethics]***. Further, compliance with all laws, rules and regulations related to Company activities is mandatory and your conduct must be such as to avoid even the appearance of impropriety.

50.    In a section titled, "Conflicts of Interest," the Code of Corporate Governance and Ethics states the following:

> ***Company policy prohibits conflicts of interest***. A "conflict of interest" occurs when your private interest interferes in any way with the interests of RenovaCare.

PHDATA 8018031_1

\*       \*       \*

You owe a duty to RenovaCare to advance its legitimate interests. ***You are prohibited from*** competing with the Company and from ***using corporate property, information or position for personal opportunities or gain.*** You may not use or offer for use RenovaCare resources (time, technology, property or information) for non-RenovaCare business.

51.    The section of the Code of Corporate Governance and Ethics titled

"Financial Management and Disclosure" states the following:

The Company must disclose to the SEC, current security holders and the investing public information that is required, and any additional information that may be necessary to ensure the required disclosures are not misleading or inaccurate. ***The Company requires you to participate in the disclosure process, which is overseen by the [CFO] and/or [CEO].***

\*       \*       \*

***Officers and employees must fully comply with their disclosure responsibilities in an accurate and timely manner or be subject to discipline of up to and including termination of employment.***

52.    In a section titled, "Accounting Standards," the Code of Corporate

Governance and Ethics states the following:

RenovaCare maintains its accounting records and prepares its financial statements in accordance with accounting principles generally accepted in the U.S. (GAAP) and with statutory accounting principles, as promulgated by the [SEC] and other regulating authorities. ***If you are aware or have reason to believe that there are violations of either law or policy regarding the Company's financial records or operations, you are obligated to report such information promptly.***

26

53.    The section of the Code of Corporate Governance and Ethics titled "Reporting of Any Illegal or Unethical Behavior; Points of Contact" states further the Individual Defendants' duty to disclose:

> If you are aware of any illegal or unethical behavior or if you believe that an applicable law, rule or regulation or this [Code of Corporate Governance and Ethics] has been violated, the matter must be promptly reported to the [CEO], the [CFO] or the Corporate Ethics & Compliance Committee.

54.    Upon information and belief, the Company maintained versions of the Code of Corporate Governance and Ethics during the Relevant Period that imposed the same, or substantially and materially the same or similar, duties on, among others, the Individual Defendants, as those set forth above.

### C.    Duties Pursuant to the Company's Code of Ethics

55.    The Individual Defendants, as officers and/or directors of RenovaCare, were also bound by the Company's Code Ethics (the "Code of Ethics"), which, similar to the Company's Code of Corporate Governance and Ethics, sets out basic principles to guide, as well as specific requirements to bind, all directors, officers, and employees of RenovaCare, who are required to know and conduct themselves in accordance therewith, as well as applicable laws and regulations, and to avoid the appearance of improper behavior.

56.    The Code of Ethics specifically states that it "applies to all [o]fficers, [d]irectors, and [e]mployees of the company and its affiliates."

PHDATA 8018031_1

57.    In a section titled, "Standard of Conduct," the Code of Ethics states the

following:

> RenovaCare insists that all aspects of its business operations be
> conducted with honesty, integrity, fairness and with respect for those
> affected by its business activities.  Similarly, RenovaCare expects the
> same in its relationships among those with whom it does business.
>
> All [e]mployees are expected to maintain and promote integrity and
> honesty in all business transactions.  Employees must conduct
> themselves according to the highest ethical standards and are expected
> to apply ethical business practices in the administrative and financial
> affairs of RenovaCare business operations.
>
> There is no Code of Ethics that can expect to define suitable behavior
> for each situation, nor should it seek to do so.  As such, [e]mployees are
> expected to exercise vigilance and make considered judgment of what
> is right and proper in any particular situation.
>
> While carrying out the business operations of RenovaCare,
> [e]mployees are expected to be accountable, truthful, trustworthy,
> conscientious, and committed to the highest standards of ethical
> business practices.  ***As such, [e]mployees are required to avoid all
> impropriety as well as the appearance of impropriety when
> conducting RenovaCare business operations.***

58.    In a section titled, "Accuracy and Completeness of Accounting

Records," the Code of Ethics states the following:

> RenovaCare's accounting and supporting documents must accurately
> and completely describe and represent the nature and result of
> RenovaCare's business operations.  The results and activities of
> RenovaCare's operations must be presented in a fair and unbiased
> manner.

*    *    *

PHDATA 8018031_1

***Misappropriation, wrongful allocation, or improper use of the Company's assets and property, or the false entry to records and reports by any [e]mployee or by others must be reported to Board of RenovaCare.***

59.     The section of the Code of Ethics titled "Accurate and Timely Communications" states the Individual Defendants' duty to disclose:

RenovaCare expects [e]mployees to be ***completely truthful and forthright in all internal and external interactions and communications, whether with shareholders, clients, government agencies, or others.***

***Employees will ensure that all statements are accurate and complete with no misrepresentations which may mislead or misinform.*** In all cases, [e]mployees are expected to provide full, prompt and accurate disclosure to governmental agencies.

60.     The section of the Code of Ethics titled "Disclosure Of Personal Interest" further states the regarding the Individual Defendants' duty to disclose:

RenovaCare [e]mployees are expected to fully disclose any personal interest(s) which could impinge or might reasonably be considered by others to conflict with their business dealings with industry.

***RenovaCare [e]mployees must not engage in personal activities and financial interests that may conflict with their responsibilities and obligations to the Company*** or give assistance to competitors, in conflict with the interests of RenovaCare or its clients.

61.     In the section titled "Annual Acknowledgment," the Company sets forth the requirement that each employee shall "sign a statement annually that he or she has read and understands RenovaCare's Code of Ethics."

29

62.     To further demonstrate the Company's intention of making the Code of Ethics and its specific requirements binding on the RenovaCare employees, as well as the Individual Defendants, the Code of Ethics requires that the signed annual acknowledgment include a statement from the employee affirming "that he or she is in full compliance with the [Code of Ethics]."

### D.    Control, Access, and Authority

63.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of RenovaCare, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by RenovaCare.

64.     Because of their advisory, executive, managerial, and directorial positions with RenovaCare, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of RenovaCare.

65.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of RenovaCare and was at all times acting within the course and scope of such agency.

### E.    Reasonable and Prudent Supervision

66.     To discharge their duties, the officers and directors of RenovaCare were required to exercise reasonable and prudent supervision over the management,

policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of RenovaCare were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest-quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide shareholders and analysts as to the true business practices, operations, and financial prospects of the Company at any given time, including making accurate statements about the Company's business practices, operations, and financial prospects, as well as its internal controls;

(d)     remain informed as to how RenovaCare conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices, and make such disclosures as necessary to comply with securities laws; and

31

(e)    ensure that RenovaCare was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## BREACHES OF DUTIES

67.    The conduct of the Individual Defendants complained of herein involves knowing and culpable violations of their obligations as officers and/or directors of RenovaCare, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders, which the Individual Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

68.    The Individual Defendants breached their duties of loyalty and good faith by allowing the other Individual Defendants to deceive, or by themselves deceiving, the investing public and artificially inflating and maintaining the market price of RenovaCare's securities by making, or causing to be made, untrue statements and omissions about the Company' acquisitions and as a result of the foregoing, RenovaCare's public statements were materially false and misleading at all relevant times.

69.    Further, the Individual Defendants breached their fiduciary duties by failing entirely to establish and maintain an adequate system of internal controls and monitor necessary changes in corporate governance.

PHDATA 8018031_1

70.    The Individual Defendants also violated, or failed to prevent others from violating, federal securities laws, which have resulted in, and exposed the Company to, the Securities Class Action and the SEC Action.  As a result of these and other breaches of fiduciary duties, RenovaCare has expended, and will continue to expend, significant sums of money.

71.    Thus, the Individual Defendants, because of their positions of control and authority as officers and/or directors of RenovaCare, were able to, and did, directly, and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company, which resulted in substantial harm to RenovaCare.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

72.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with, and conspired with, one another in furtherance of their wrongdoing.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

73.    During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to mislead shareholders into believing that the Company's business and financial prospects were better than they actually were.  In furtherance of this plan, conspiracy, and

33

course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

74.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (a) disguise the Individual Defendants' violations of law, including breaches of fiduciary duties, corporate waste, unjust enrichment, and violations of the federal securities laws; and (b) disguise and misrepresent the Company's actual business and financial prospects.

75.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently release improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

76.     Each of the Individual Defendants aided and abetted, and rendered substantial assistance, in the wrongs complained of herein.  In taking such actions to substantially assist the commissions of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing,

PHDATA 8018031_1

substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and in furtherance of the wrongdoing.

## DAMAGES TO RENOVACARE

77.    As a result of the Individual Defendants' wrongful conduct, RenovaCare conducted its affairs in evident violation of federal and state laws and regulations.   In addition, the Company was forced to disseminate false and misleading statements, and to omit material information to make such statements not false and misleading when made.   This misconduct has devastated RenovaCare's credibility.   Further, RenovaCare is the subject of the Securities Class Action, as well as the SEC Action.   RenovaCare has been, and will continue to be, severely damaged and injured by the Individual Defendants' misconduct.

78.    As a direct and proximate result of the Individual Defendants' conduct, RenovaCare has expended, and will continue to expend, significant sums of money. Such expenditures include, without limitation:

(a)    Costs incurred in connection with being named a defendant in the Securities Class Action, including the defense and settlement of or judgement in the litigation, as well as any other related litigation based on the same or substantially similar facts;

(b)    Costs incurred in connection with being named a defendant in the SEC Action, including the defense and settlement of or judgement in the

PHDATA 8018031_1

litigation, as well as any other related litigation based on the same or substantially similar facts;

(c)    Costs incurred in connection with the lavish and unjustified compensation and benefits paid to Individual Defendants while they were actively breaching their fiduciary duties to the Company, including bonuses tied to the Company's attainment of certain objectives, which was based, at least in part, on RenovaCare's artificially inflated stock price;

(d)    Costs incurred from the loss of the Company's customers' confidence in RenovaCare and its products and services; and

(e)    Costs associated with the reputational harm suffered by RenovaCare as a result of the misconduct detailed herein, including loss of goodwill, increased borrowing costs, and loss of market capitalization and the resulting impact on the Company's ability to access the capital markets to raise money.

79.    Moreover, these actions have irreparably damaged RenovaCare's corporate image and goodwill.  For at least the foreseeable future, RenovaCare will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that RenovaCare's ability to raise equity capital or debt on favorable terms in the future is now impaired.

80.    The Company has also suffered severe losses in market capitalization as a direct result of the Individual Defendants' wrongdoing alleged herein.

## DERIVATIVE ALLEGATIONS

81.    Plaintiff incorporates by reference all prior paragraphs as if full set forth herein.

82.    Plaintiff brings this action derivatively, in the right and for the benefit of RenovaCare, to redress injuries suffered, and to be suffered, by RenovaCare as a direct result of the Individual Defendants' breaches of fiduciary duties and other violations of law.

83.    RenovaCare is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

84.    Plaintiff will adequately and fairly represent the interests of RenovaCare in enforcing and prosecuting its rights.

85.    Plaintiff is and has continuously been a RenovaCare shareholder since prior to the start of the Relevant Period, and have been shareholders at all relevant times, including at the time of the Individual Defendants' wrongdoing complained of herein.

86.    Due to the Board's direct involvement in the wrongdoing, its members' lack of independence, and the substantial likelihood of liability its members face,

37

prosecution of this action independent of the current Board is in the best interests of the Company and its stockholders.

## FUTILITY ALLEGATIONS

87.    Plaintiff incorporates by reference all prior paragraphs as if full set forth herein.

88.    RenovaCare's current Board consists of only two members, Defendants Rayat and Nedd.  In order to establish that demand on the Board is futile, Plaintiff need only establish reasonable doubt that a majority of the Board—here, only ***one*** of two Board members—can independently and impartially review a demand.

89.    Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile and useless act.

### A.    Demand Is Excused as to Defendant Nedd Because He Lacks Independence

90.    Defendant Nedd falls under the OTC Market Group's "bright-line" independence disqualification.[5]  According to the OTC Market Group's Standards, a director is not independent if he or she is, or has been within the last three years, an employee or an executive officer of the listed company.  Because Nedd is RenovaCare's current President and CEO, he may not be considered independent.

---

[5]  https://www.otcmarkets.com/files/OTCQX_Rules_for_US_Companies.pdf  (last accessed on December 29, 2021).

PHDATA 8018031_1

91.    Furthermore, Defendant Nedd is not independent because his professional occupation is his employment with RenovaCare.  Indeed, with his handsome equity and salary serving as his primary source of income, Defendant Nedd lacks independence from the one other member of the current Board due to his interest in maintaining his executive position.  This lack of independence renders Defendant Nedd incapable of impartially considering a demand to commence and vigorously prosecute this action.

**B.    Demand Is Excused as to Defendant Rayat Because He Faces a Substantial Likelihood of Personal Liability**

92.    Defendant Rayat, a current member of the Board, faces a substantial likelihood of personal liability, for, among other things: (a) making false and misleading statements to the investing public; (b) allowing the false and misleading statements provided to the investing public; (c) permitting the Company to waste corporate assets by pursuing a strategy of garbage acquisitions to camouflage the Company's sinking organic growth; (d) failing to implement, maintain, and monitor appropriate internal controls over the Company's public release of information to analysts and investors; and/or (e) failing to implement, maintain, and monitor appropriate internal controls over RenovaCare.

93.    As alleged in the SEC Complaint, from at least July 2017 until January 2018, RenovaCare and Defendant Rayat, the Company's controlling shareholder, defrauded investors by soliciting StreetAuthority, an online financial publishing

PHDATA 8018031_1

company, to run a promotion designed to increase RenovaCare's stock price and trading volume, and then concealed the Company's involvement in the promotion from investors. Defendant Rayat worked closely with StreetAuthority on the promotion. Defendant Rayat provided false information to StreetAuthority regarding the efficacy of RenovaCare's experimental burn-wound healing medical device called the SkinGun, edited StreetAuthority's promotional materials, advised StreetAuthority on how to distribute the promotion to enhance its effectiveness, and arranged to pay StreetAuthority for the promotion using RenovaCare's funds that were routed through third parties.

94.     Accordingly, Defendant Rayat faces a substantial likelihood of liability for his breach of fiduciary duties, making any demand upon him futile.

### C.     Demand Is Excused Due to Defendant Rayat's Control Over Defendant Nedd, the Only Other Member of the Board

95.     The Board is interested due to Defendant Rayat's dominion and control over Defendant Nedd, the only other member of the Board.

96.     Defendant Rayat is the Chairman of RenovaCare's Board and by all accounts is the driving force behind the Company. Defendant Rayat has been a long-time majority stockholder, owning over 70% of the Company's voting stock, and financial supporter of RenovaCare. Specifically, through his family office, Kalen Capital Corporation, he has invested over $20 million into RenovaCare since 2013. Defendant Rayat's support was purportedly key to advancing the SkinGun spray

device and CellMist System from an unpatented technology with little published data to a technology platform with eight patent families, numerous peer reviewed articles and conditional FDA approval of its Investigational Device Exemption application to conduct a clinical trial to evaluate safety and feasibility. As the Chairman of the Board, the Company is entirely dependent on Defendant Rayat for funding and is subject to his voting decisions—and his decisions *alone*—as majority and controlling shareholder.

97.    Moreover, given this level of control, Defendant Rayat has been able to handpick RenovaCare's officers and directors, including Defendant Nedd. Specifically, Defendant Nedd, the only other Board member, was selected by Defendant Rayat to serve as a Board member and was first appointed to RenovaCare's Board on March 16, 2021. Moreover, with Defendant Rubino's resignation as Chairman, President, and CEO of RenovaCare on March 25, 2021, Defendant Nedd, having been associated with the Company for less than 30 days, was also appointed President and CEO, effective March 26, 2021, by "unanimous written consent"—specifically the consent of Defendant Rayat.

98.    Further, with Defendant Rubino's resignation, Defendant Rayat appointed himself as Chairman of the Board.

99.    Accordingly, Defendant Nedd was unilaterally chosen by Defendant Rayat, is dependent upon his employment with the Company as his primary source

PHDATA 8018031_1

of income, and is beholden to Defendant Rayat, and would not be able to objectively determine whether to prosecute Defendant Rayat (and others) for their breaches of fiduciary duty and other violations of law.

100. For the reasons stated herein, there is reasonable doubt that a majority of the Board members—Defendants Rayat and Nedd—are capable of independently considering a demand to commence and vigorously prosecute an action against themselves (and others), due to Defendant Rayat's dominion and control of the Board.

**D.** **Demand Is Futile for the Board's Utter Failure to Implement a System of Internal Controls**

101. The Board is further disqualified from fairly evaluating the derivative claims due to its complete and utter failure to implement and maintain an adequate system of internal disclosure controls and procedures within the Company to prevent the misconduct detailed herein, constituting a bad faith abdication of the Board's fiduciary duties owed to the Company. *See In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 970–71 (Del. Ch. 1996).

102. Specifically, the Board, of which Defendant Rayat currently serves as Chairman, as well as served as Chairman from March 2018 to October 2020, failed to implement *any* committees to oversee, evaluate, and advise on matters such as the issuance of statements. *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (a *Caremark* claim exists when directors and officers fail to implement any reporting or

information system or controls or, having implemented such controls, consciously fail to oversee their operations, thus disabling themselves from being informed of risks or problems requiring their attention).

103.   The Board is and was responsible for implementing internal controls sufficient to protect RenovaCare from issuing materially false and misleading statements such as those detailed herein.

104.   The Board's failure of oversight reflects a conscious and deliberate disregard for their fiduciary duties—namely, bad faith inaction in the face of circumstances that plainly called for immediate action.

105.   As such, the Board faces a substantial likelihood of liability for its failure to implement and maintain an adequate system of internal controls and procedures, rendering demand upon the Board futile.  Therefore, demand is futile as to the Board on this independent basis.

## CAUSES OF ACTION

### COUNT I

### Breach of Fiduciary Duties
### (Against Individual Defendants)

106.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.   As alleged in detail herein, each of the Individual Defendants owed, and owe, RenovaCare and its shareholders fiduciary obligations, including the duties

43

of care, loyalty, good faith, fair dealing, independence, oversight, and supervision. These duties include the duty of full and fair disclosure to shareholders, also known as the duty of candor.  To execute this duty, the Individual Defendants were required to disseminate accurate, truthful, and complete information to shareholders at all times.

108.  In direct violation of these duties, the Individual Defendants each knowingly or recklessly issued, or approved the issuance of, false public statements to shareholders that misrepresented and/or failed to disclose material information concerning the effects of increased competition on the Company's business and as a result of the foregoing, RenovaCare's public statements were materially false and misleading at all relevant times.  Through their fraudulent scheme, the Individual Defendants were able to artificially inflate the Company's financials, and its stock price, throughout the Relevant Period.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the best interests of the Company and its shareholders.

109.  Moreover, as alleged in detail herein, each of the Director Defendants had a duty to exercise good faith in order to ensure that the Company established and maintained adequate internal controls.  When put on notice of problems with RenovaCare's business, operational and compliance policies, and/or internal

controls, each Director Defendant was required to exercise good faith in taking appropriate action to correct the misconduct and to prevent its recurrence.

110.   In direct violation of these duties, the Director Defendants completely abdicated their fiduciary obligations by failing entirely to implement and maintain an adequate system of internal controls and procedures, willfully ignoring the obvious and pervasive problems with RenovaCare's internal control practices and procedures when put on notice of the same, and failing to make a good faith effort to correct the problems or their recurrence.  As directors of RenovaCare, the Director Defendants were responsible for the authorizing of, or the failure to monitor, the business practices which resulted in violations of the law as alleged herein.  Each of the Director Defendants had knowledge of and actively participated in, approved of, or acquiesced in the wrongdoings alleged herein.

111.   As a direct and proximate result of the Individual Defendants' failure to perform these fiduciary obligations, RenovaCare has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

112.   Plaintiff, on behalf of RenovaCare, has no adequate remedy at law.

PHDATA 8018031_1

## COUNT II

### Unjust Enrichment
### (Against Individual Defendants)

113.   Plaintiff incorporates by reference and realleges ¶¶1–105 above, as though fully set forth herein.

114.   By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of RenovaCare.

115.   The Individual Defendants were unjustly enriched as a result of the unwarranted and excessive compensation they received while breaching their fiduciary duties owed to RenovaCare.

116.   Plaintiff, as a shareholder and representative of RenovaCare, seeks restitution from the Individual Defendants, the imposition of a constructive trust over the Individual Defendants' proceeds from their misconduct, and/or an order requiring the Individual Defendants to disgorge all profits, benefits, and other compensation obtained through, or as a result of, their wrongful conduct and fiduciary breaches.

117.   As a direct and proximate result of these Defendants' misconduct, the Company has suffered significant damages, as alleged herein.

118.   Plaintiff, on behalf of RenovaCare, has no adequate remedy at law.

PHDATA 8018031_1

## COUNT III

### Waste of Corporate Assets
### (Against Individual Defendants)

119.   Plaintiff incorporates by reference and realleges ¶¶1–105 above, as though fully set forth herein.

120.   The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of RenovaCare's internal controls, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by allowing the Company to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to the Company.

121.   As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying excessive compensation and bonuses to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend the Individual Defendants' unlawful actions, including defending the Company and its officers against the Securities Class Action and the SEC Action.

122.   As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

123.   As a direct and proximate result of these Defendants' breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

124.   Plaintiff, on behalf of RenovaCare, has no adequate remedy at law.

## COUNT IV

### For Contribution and Indemnification under Nevada Law
### (Against All Defendants)

125.   Plaintiff incorporates by reference and re-alleges ¶¶1–105 above, as though fully set forth herein.

126.   This claim is brought derivatively on behalf of the Company for contribution and indemnification against defendants.

127.   RenovaCare is named as a defendant in the Securities Class Action.  If RenovaCare is ultimately found liable for violating federal securities laws, the Company's liability will arise, in whole or in part, from the intentional, knowing, or reckless acts or omissions of some or all of the defendants as alleged herein.

128.   Accordingly, RenovaCare is entitled to all appropriate contribution or indemnification from defendants, who are responsible for exposing RenovaCare to liability under Nevada contribution and indemnification law.

129.   Plaintiff, on behalf of RenovaCare, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Finding that a stockholder demand on the RenovaCare Board would have been a futile and useless act;

B.     Finding that the Individual Defendants have breached their fiduciary duties to RenovaCare, wasted corporate assets, were unjustly enriched, and violated the federal securities laws;

C.     Against all Defendants for the damages sustained by the Company as a result of the Individual Defendants' wrongdoing as alleged herein;

D.     Directing RenovaCare to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect RenovaCare and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following corporate governance proposals or policies:

     i.    a proposal to strengthen the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

    ii.    a proposal to strengthen the Company's internal reporting and financial disclosure controls;

iii. a proposal to develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

iv. a proposal to replace Defendant Rayat as Chairman of the Board and to require an independent Chairman of the Board; and

v. a provision to appropriately test and then strengthen the Company's internal operational control functions.

E. Awarding to RenovaCare restitution from the Individual Defendants, and ordering disgorgement of all profits, benefits, and other compensation obtained by each of them;

F. Requiring the Individual Defendants to return to RenovaCare all compensation and remuneration of whatever kind paid to them by RenovaCare during the time that they were in breach of the fiduciary duties they owed to RenovaCare;

G. Directing the Individual Defendants to establish, maintain, and fully fund effective corporate governance and compliance programs to ensure that RenovaCare's directors, officers, and employees do not engage in wrongful or illegal practices;

H. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses;

I.      Should the Securities Class Action settle, directing that RenovaCare must not contribute any cash or other consideration towards funding such a settlement;

J.      Granting additional appropriate equitable and/or injunctive relief to remedy the Individual Defendants' misconduct, as permitted by law; and

K.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  January 5, 2022         **SCHNADER HARRISON SEGAL & LEWIS LLP**

*/s/ Lisa J. Rodriguez*
Lisa J. Rodriguez
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1165
Telephone: (856) 482-5222
Facsimile: (856) 482-6980
ljrodriguez@schnader.com

**JOHNSON FISTEL, LLP**
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (770) 200-3101
MichaelF@johnsonfistel.com

**JOHNSON FISTEL, LLP**
Frank J. Johnson
600 West Broadway, Suite 1540
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
FrankJ@johnsonfistel.com

***Counsel for Plaintiff***

# VERIFICATION

I, Zoser Vargas, am the plaintiff in this action. I have reviewed the allegations made in the foregoing Verified Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 1/4/2022

DocuSigned by:

*ZOSER VARGAS*

3C7184A07B04430

ZOSER VARGAS

JS 44   (Rev. 10/20)                          **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ZOSER VARGAS, Derivatively on behalf of RENOVACARE, INC., | See Schedule A. |

**(b)** County of Residence of First Listed Plaintiff   Jefferson, Kentucky
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   New York County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lisa J. Rodriguez, Esq. - Schnader Harrison Segal & Lewis LLP, 220 Lake Drive East, Ste. 200, Cherry Hill, NJ (856) 482-5741

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                          Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☒ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Breach of fiduciary duties; unjust enrichment; corporate waste; contribution and indemnification

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.    DEMAND $    CHECK YES only if demanded in complaint:   JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*   JUDGE   Hon. Brian R. Martinotti    DOCKET NUMBER  2:21-cv-20569-BRM-ESK

DATE   1/5/2022

SIGNATURE OF ATTORNEY OF RECORD   /s/ Lisa J. Rodriguez

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## Schedule A

HARMEL S. RAYAT, THOMAS BOLD, KAIYO NEDD, ROBERT W. COOK, ALAN L. RUBINO, LYDIA M. EVANS, KENNETH KIRKLAND, JATINDER S. BHOGAL, and STEVE YAN-KLASSEN,

             Defendants,

    -and-

RENOVACARE, INC., a Nevada corporation,

             Nominal Defendant.